IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARVIN GERALD PESHLAKAI,

       Plaintiff,

v.                                                           CIV 15-0505 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (*Doc. 15*) filed on January 29, 2016. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serving as the presiding judge and entering final judgment. *See Docs. 4, 7.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken and will be **GRANTED**.

**I.  Procedural History**

On September 14, 2011, Mr. Marvin Peshlakai (Plaintiff) filed an application with the Social Security Administration for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Administrative Record[1] (AR) at 168–75. Plaintiff alleged a disability onset date of May 7, 2011. AR at 168. Disability Determination Services

---

[1] Documents 12-1 through 12-18 comprise the sealed Administrative Record. *See Doc. 12.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

determined that Plaintiff was not disabled both initially (AR at 61–71) and on reconsideration (AR at 72–83). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his SSI application. AR at 120–22.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 39-60. ALJ Ann Farris issued an unfavorable decision on December 19, 2013. AR at 19–36. Plaintiff submitted a Request for Review of the ALJ's decision to the Appeals Council (AR at 15–18), which the council denied on April 16, 2015 (AR at 1–5). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the

assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. §404.1545(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At Step One of the process, ALJ Farris found that Plaintiff had not engaged in substantial gainful activity since his application date of September 14, 2011. AR at 24 (citing 20 C.F.R. § 416.971 *et seq.*). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: osteoarthritis of the bilateral knees, right rotator cuff tear, T4 thoracic compression fracture, and obesity." AR at 24 (citing 20 C.F.R. § 416.920(c)). The ALJ also found that Plaintiff's incisional ventral hernia, which he received treatment for in 2012, was a non-severe impairment. AR at 24 (citing Soc. Sec. Ruling, SSR 96-3p, Policy Interpretation Ruling Titles II & XVI: Considering Allegations of Pain & Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe, 1996 WL 374181 (July 2, 1996)). At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 24 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).

At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms[,] . . . his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." AR at 26. The ALJ considered the evidence of record and the opinions of Plaintiff's treating physicians, giving little weight to the opinions included in the questionnaires of one treating physician, Dr. Neil Meade, M.D. AR at 26–30. Ultimately, the ALJ found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except he can sit for 30 minutes at a time before needing to stand for several minutes and can stand for 15 minutes at a time before needing to sit." AR at 25. The ALJ further found that Plaintiff "can only occasionally climb stairs, balance, and stoop but never climb ladders or scaffolds, kneel, crouch, or crawl." AR at 25. Finally, the ALJ found that Plaintiff "can never reach overhead with his right arm but can frequently reach with his left arm." AR at 25.

ALJ Farris concluded that Plaintiff was not able to perform any of his past relevant work. AR at 30 (citing 20 C.F.R. § 416.965). In "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity," and relying on testimony from the VE, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform[,]" including cashier, courier/deliverer, and ticket taker. AR at 30–31. The ALJ ultimately determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 14, 2011 . . . ." AR at 31 (citing 20 C.F.R. § 416.920(g)).

4

**III.     Legal Standard**

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original) (internal quotation omitted)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

**IV.     Discussion on the ALJ's Analysis of the Treating Physician's Opinions**

Plaintiff makes two arguments in support of his motion: (1) "ALJ Farris failed to accord the proper weight to the opinion of Mr. Peshlakai's treating physician Dr. Meade"; and (2) "ALJ Farris failed to incorporate the functionally limiting effects of obesity into Mr. Peshlakai's RFC, contrary to [Soc. Sec. Ruling, SSR 02-01p, Titles II & XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002)], Listing 1.00Q, and Tenth Circuit precedent." *Doc. 15 at 2.* The Court turns first to whether ALJ Farris properly considered Dr. Meade's opinions.

### A.     Relevant Treatment Notes and Medical Opinions

Plaintiff first saw Dr. Neil Meade, M.D., on September 3, 2010, for "bilateral shoulder and knee pain." AR at 320. Plaintiff complained that he had a "difficult time throwing or walking up steps." AR at 320. Dr. Meade sent Plaintiff to Dr. Arnold D. Miller, a radiologist who examined his shoulders and knees. AR at 291-92. Dr. Miller found that Plaintiff had "an old third degree AC separation with healed clavicle fracture and calcification of the coricoclavical ligament" but "[n]o acute bone injury" in his left shoulder, while his "right shoulder appear[ed] within normal limits." AR at 291. Dr. Miller found "[s]oft tissue swelling and probable effusion in the right knee. Both knees [were] otherwise within normal limits." AR at 292.

Plaintiff did not see Dr. Meade again for more than six months. He missed an appointment with Dr. Meade in February 2011, and kept his appointment on March 29, 2011. AR at 310–15. Dr. Meade noted that he previously set up an MRI of Plaintiff's shoulders and knees, but Plaintiff did not have it done. AR at 310. Plaintiff reported that "[h]e continues to have pain and limited range of motion of his right shoulder[, . . .

though h]is strength has remained good and he [has] no numbness or tingling down his arm." AR at 310. There are no notes to establish that Plaintiff complained about his left shoulder or arm. AR at 310. Plaintiff reported that "[h]is knees continue to bother him especially when he has long walks or [has] been up on them for long periods of" time. AR at 310. Plaintiff also reported that he had done some heavy lifting and was experiencing low back pain. AR at 310. Dr. Meade concluded that Plaintiff had a rotator cuff injury to his right shoulder, degenerative arthritis in his knees, and a lumbar strain; he also noted decreased range of motion and tenderness over the AC joint in Plaintiff's left shoulder. AR at 311. Dr. Meade refilled Plaintiff's Naprosyn prescription, added a methocarbamol prescription, recommended Williams exercises, and ordered an MRI of Plaintiff's right shoulder. AR at 311.

     Plaintiff's April 13, 2011 MRI of his right shoulder revealed evidence "consistent with a full-thickness rotator cuff tear" as well as a "[l]arge irregular bone cyst . . . ." AR at 427. Plaintiff missed a scheduled appointment with Dr. Meade in August 2011. AR at 302. He kept a September 20, 2011 appointment, which was several months after his May 2011 car accident. AR at 298. Dr. Meade noted that Plaintiff sustained a fracture of his thoracic spine and was in a "half body and neck cast until three weeks" earlier and was "told not to work until his follow up . . . in [six] months." AR at 298. Dr. Meade examined an MRI Plaintiff had done earlier in September[2] and noted that Plaintiff had "asceptic necrosis of [both] shoulders from a [previous] accident[,]" a rotator cuff tear, a

---

[2] Dr. Meade mentioned in his September 20, 2011 notes that he had ordered an MRI after Plaintiff's March 2011 appointment, but Plaintiff never had the MRI performed. AR at 298. The Court notes, however, that while there are records of an April 2011 MRI (AR at 427), the Court cannot locate any records of a September 2011 MRI.

fractured thoracic spine, and tendinosis of the right shoulder. AR at 298. Plaintiff complained that "the pain still limits his ability to do most work." AR at 298.

Dr. Meade filled out the first of the three RFC questionnaires he completed on the same day—September 20, 2011. AR at 295–96. He diagnosed Plaintiff with degenerative arthritis of the knees and shoulders and a fractured thoracic spine. AR at 295. He opined that Plaintiff's impairment-associated symptoms are severe enough to frequently interfere with his ability to perform simple work-related tasks. AR at 295. Dr. Meade found that during a typical 8 hour workday, Plaintiff would need to take unscheduled breaks every 30 minutes for 10 minutes at a time; sit for 30 minutes at a time for a total of 2 hours per workday; stand and/or walk for 15 minutes at a time for a total of 1 hour per workday; never lift and carry any weight; grasp, turn, and twist objects no more than 10% of the day with either his right or left hands; and never use his arms to reach. AR at 295–96. Dr. Meade opined that Plaintiff would likely be absent from work more than 4 times per month as a result of his impairments. AR at 296.

Dr. Meade completed the second RFC questionnaire more than one year later, on January 22, 2013. AR at 424–25. The Court cannot find any record that Plaintiff visited Dr. Meade in the time between the first and second questionnaires. Dr. Meade listed Plaintiff's diagnosis as a rotator cuff tear and a compression fracture of the thoracic spine. AR at 424. He marked his prognosis as "poor" and said that Plaintiff's symptoms would constantly interfere with his ability to perform simple work-related tasks. AR at 424. Dr. Meade found that during a typical 8 hour workday, Plaintiff would need to take unscheduled breaks every 1–2 hours for 15 minutes at a time; sit for 45 minutes at a time for a total of 4 hours per workday; stand and/or walk for 20 minutes at

a time for a total of 1 hour per workday; lift and carry 10 lbs or less "occasionally" (less than 1/3 of the workday); grasp, turn, and twist objects no more than 50% of the day with his right hand (no restriction on the left hand); use his right fingers for fine manipulation 80% of the day (no restriction on the left fingers); and never use his right arm to reach (no restriction on the left arm). AR at 424–25. Dr. Meade opined that Plaintiff would likely be absent from work 3–4 times per month as a result of his impairments. AR at 425.

Plaintiff visited Dr. Meade again on March 13, 2013. AR at 492. Plaintiff reported that while he had completed two months of physical therapy, he had no pain relief, no improvement in left shoulder strength, and he was unable to lift or do repetitive movements with his left arm due to chronic dislocation in his shoulder. AR at 492. Plaintiff also reported that he is unable to sit or stand for long periods or do any lifting due to back pain. AR at 492.

Dr. Meade completed the third RFC questionnaire on April 17, 2013. AR at 547–48. He marked Plaintiff's prognosis as "fair" and repeated his opinion that the impairments would constantly interfere with simple work-related tasks. AR at 547. Dr. Meade found that during a typical 8 hour workday, Plaintiff would need to take unscheduled breaks every hour for 10-15 minutes at a time; sit for 30 minutes at a time for a total of 2 hours per workday; stand and/or walk for 15 minutes at a time for a total of 1 hour per workday; and lift and carry up to 10 lbs "occasionally." AR at 547–48. Dr. Meade did not complete the blanks related to Plaintiff's ability to use his hands, fingers, or arms. AR at 548. Dr. Meade opined that Plaintiff would likely be absent from work more than 4 times per month as a result of his impairments. AR at 548.

### B.     The ALJ's Analysis of Dr. Meade's Opinions

ALJ Farris considered the x-rays Dr. Meade ordered after Plaintiff's September 2010 visit (AR at 26, 336–37), as well as Dr. Meade's treatment notes from Plaintiff's September 2011 and March 2013 visits, which reflect Plaintiff's own reports of pain and his inability to work (AR at 298, 492). The ALJ's opinion also demonstrates that she considered the record evidence from Plaintiff's other treating physicians. AR at 26–29.

The ALJ considered Dr. Meade's three RFC questionnaires, noting how they differed from one to the next. AR at 28–29. ALJ Farris concluded that "[i]n spite of Dr. Meade's status as [Plaintiff's] treating physician, I cannot assign controlling weight to his opinions because they are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence of record . . . ." AR at 29 (citing Soc. Sec. Ruling, SSR 96-2p, Policy Interpretation Ruling Titles II & XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188 (July 2, 1996)). The ALJ noted "that Dr. Meade did not specify objective medical findings to support his extremely restrictive opined limitations" and found "that none of the medical evidence discussed above indicates that the claimant cannot perform sustained work activities on a regular and continuing basis . . . ." AR at 29. ALJ Farris concluded that Dr. Meade's "assessments are internally inconsistent, particularly with regard to the alleged manipulative limitations" and noted that "[a] review of Dr. Meade's treatment notes suggests [he] may have relied heavily on [Plaintiff's] own subjective complaints when assessing [his] functional abilities." AR at 29. For these reasons, the ALJ gave "little weight to the opinions included in Dr. Meade's questionnaires." AR at 29.

**C.     The Two-Step Inquiry for a Treating Physician's Opinion**

An ALJ must consider all medical opinions found in the record. *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(b), 416.927(b)). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about" a plaintiff's impairments. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An opinion from a treating physician is generally entitled to more weight than either an examining or an agency physician. *Padilla*, 2015 WL 10383109, at *4 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (internal citations omitted)).

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted, alteration in original)).

Where the "treating physician's opinion is not supported by medical evidence or consistent with the record," *id.* (citation omitted), it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. [§§] 404.1527 and 416.927.'"

11

*Robinson*, 366 F.3d at 1082 (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *4))). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins*, 350 F.3d at 1300–13 (internal quotation omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that he ultimately assigns to" those opinions. *Padilla*, 2015 WL 10383109, at *4 (quoting *Langley*, 373 F.3d at 1119 (internal quotation omitted)). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 1. The ALJ's analysis at the first step of the inquiry, though not ideal, does not provide a basis for remand.

Dr. Meade, a licensed medical doctor, is an acceptable medical source under the regulations. 20 C.F.R. § 404.1513(a)(1). "As explained above, the ALJ must follow two steps if [she] wishes to accord a treating physician's opinion less than 'controlling weight.'" *Padilla*, 2015 WL 10383109, at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011)

(citing *Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)).

ALJ Farris concluded that Dr. Meade's opinions were not supported "by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the other substantial evidence of record . . . ." AR at 29 (citing SSR 96-2p). Specifically, the ALJ found that not only did Dr. Meade fail to support "his extremely restrictive opined limitations" with objective evidence, but also "that none of the medical evidence discussed [earlier in the ALJ's opinion] indicates that the claimant cannot perform sustained work activities on a regular and continuing basis . . . ." AR at 29.

Plaintiff argues that the ALJ did not reference specific evidence in the record, and the "Court is left to infer that Dr. Meade's opinion was implicitly discounted by ALJ Farris's cursory discussion of other medical evidence elsewhere in her decision." *Doc. 15 at 16*. Plaintiff cites to a Tenth Circuit opinion in support of his position. *Id. at 15–16* (citing *Krauser*, 638 F.3d at 1331). In *Krauser*, the ALJ found that a treating physician's RFC questionnaire should not be afforded controlling weight because "it did not reference records of objective testing and it was inconsistent with other evidence, including her treatment records." *Krauser*, 638 F.3d at 1331 (citation omitted). The Tenth Circuit remanded the case because the ALJ then failed to complete the second step of the inquiry—he concluded that the opinion was not worthy of "controlling weight and then *said no more about it*." *Id.* (quotation marks and citation omitted).

The *Krauser* court also noted problems with the first step of the inquiry: contrary to the ALJ's assertion, the treating physician did reference records; additionally, the ALJ's point about the opinion being "inconsistent with other evidence, including her

13

treatment records[,]" was "stated in conclusory fashion, without reference to 'those portions of the record with which [the physician's] opinion was allegedly inconsistent.'" *Id.* (quoting *Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004)). The Tenth Circuit said that while "[i]t may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, . . . that is best left for the ALJ himself to do in the proceedings on remand." *Id.*

The ALJ's analysis with respect to the first step of the inquiry here is not ideal, though it is slightly more specific than that in *Krauser*. Like the Tenth Circuit, however, the ALJ's "decision not to give controlling weight to Dr. [Meade's] opinion is not [the Court's] primary concern with the analysis here." *Id.* It is the ALJ's assessment of Dr. Meade's opinion at the second step which gives the Court reason to remand.

### 2. The ALJ did not sufficiently explain why she assigned Dr. Meade's opinion "little weight."

At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference [she] will accord the opinion after considering the six deference factors listed above, and state sufficiently specific reasons for that determination." *Padilla*, 2015 WL 10383109, at *5; *see also* 20 C.F.R. §§ 404.1527, 416.927. The Tenth Circuit has "held that it is not necessary for the ALJ to address each factor expressly or at length[,]" provided that the ALJ offers "'good reasons in [her] decision for the weight [she] gave to the'" medical opinion. *Mounts v. Astrue*, 479 F. App'x 860, 866–67 (10th Cir. 2012) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal citation omitted)). "What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[ ] the weight the

adjudicator gave to the . . . opinion and the reasons for that weight.'" *Id.* (quoting *Oldham*, 509 F.3d at 1258 (internal quotation omitted)). The Court finds that the ALJ failed to meet this standard.

The Commissioner argues that the ALJ's opinion sufficiently explains the inconsistencies, in that the ALJ mentioned the differing manipulative limitations and other evidence of record. *Doc. 19 at 9–12.* The Court finds that the ALJ's discussion was not sufficiently specific to enable meaningful review. Of the six enumerated factors, it is arguable that the ALJ only gave cursory consideration to two: "the degree to which the physician's opinion is supported by relevant evidence; [and] consistency between the opinion and the record as a whole . . . ." *Robinson*, 366 F.3d at 1082 (quotations omitted). As noted above, the ALJ's primary bases for assigning little weight to Dr. Meade's opinion were because she found that Dr. Meade did not specify objective medical findings in support of his opinions, other record evidence did not support Dr. Meade's opinion that Plaintiff cannot work on a regular and continuing basis, and Dr. Meade's assessments were internally inconsistent, particularly with respect to Plaintiff's alleged manipulative limitations. AR at 29.

ALJ Farris did not, however, go on to adequately address (if she addressed at all) *any* of the six factors in depth. The ALJ's opinion does not reflect whether she specifically considered each of Plaintiff's visits with Dr. Meade, including the records Dr. Meade reviewed at each visit or his findings from the visits—the ALJ mentions two visits, the Court counts four visits total (AR at 320 (Sept. 3, 2010), 310 (Mar. 29, 2011), 298 (Sept. 20, 2011), 492–94 (Mar. 13, 2013); *see also* AR at 26–28). Nor does the ALJ specify what record evidence contradicted Dr. Meade's opinions. It is not enough for the

ALJ to generally refer to the evidence she "discussed above," as that leaves the Court to guess at what evidence she relied on in making that finding. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (finding where "an ALJ does not provide any explanation for rejecting medical evidence, [courts] cannot meaningfully review the ALJ's determination") (citing *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("holding '[i]n the absence of ALJ findings supported by specific weighing of the evidence, [courts] cannot assess whether relevant evidence adequately supports the ALJ's conclusion'"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("holding ALJ's listing of factors he considered was inadequate when court was 'left to speculate what specific evidence led the ALJ to [his conclusion]'")).

      Moreover, the ALJ did not discuss the "[l]ength of the treatment relationship and the frequency of examination[,]" 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i), the "[n]ature and extent of the treatment relationship[,]" 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii), or any "[o]ther factors" that the ALJ found contradicted Dr. Meade's opinion, 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). While these factors might ultimately have supported the ALJ's decision to give the opinion "little weight," *see, e.g., Bales v. Colvin*, 576 F. App'x 792, 796 (10th Cir. 2014), this Court "cannot simply presume the ALJ applied the correct legal standards in considering [Dr. Meade's] opinion[,]" in the absence of express analysis. *Robinson*, 366 F.3d at 1083 (quoting *Watkins*, 350 F.3d at 1301). ALJ Farris's "apparent failure to consider any factor" in any depth "makes the ALJ's reasoning insufficient." *Andersen v. Astrue*, 319 F. App'x 712, 722 (10th Cir. 2009). On remand, the ALJ should more closely examine these factors

and, if the ALJ decides to give Dr. Meade's opinions less than controlling weight, should support that decision with more specific findings and references to the record.[3]

## V. Discussion on the ALJ's Analysis of the Functionally Limiting Effects of Obesity

Plaintiff also contends that the ALJ failed to account for the effects of obesity on his functional limitations. *Doc. 15 at 20–25.* The Commissioner cites the ALJ's discussion of Plaintiff's obesity throughout her analysis of his limitations and argues that Plaintiff has not pointed to any "medical evidence indicating that [his] obesity resulted in functional limitations." *Doc. 19 at 13–14* (quoting *Rose v. Colvin*, No. 15-6031, 2015 WL 8593444, at *4 (10th Cir. Dec. 14, 2015)). Plaintiff did not reply to the Commissioner's argument. *See Doc. 25.*

The Court agrees that the ALJ considered Plaintiff's obesity throughout the opinion. The ALJ found obesity was a severe impairment at Step Two. AR at 24. At Step Three, she considered "obesity relative to the musculoskeletal, respiratory, and cardiovascular body systems listings" and concluded "that the medical evidence does not support a finding that [Plaintiff's] obesity has reached a level that would cause his other impairments to meet or medically equal a listed impairment." AR at 25. The ALJ then explicitly discussed obesity at Step Four: she noted that Plaintiff's Body Mass Index results in a finding of "obese" pursuant to SSR 02-1p (AR at 26), mentioned that

---

[3] Plaintiff argues that the ALJ's conclusion that Dr. Meade erroneously relied too heavily on Plaintiff's subjective complaints was also improper. *Doc. 15 at 18–19.* The Commissioner responds that because Plaintiff does not challenge the ALJ's credibility determination, he may not question her finding about whether Dr. Meade relied too heavily on Plaintiff's subjective complaints. *Doc. 19 at 11* (citing *Rivera v. Colvin*, 629 F. App'x 842, 845 (10th Cir. 2015)). The Court does not base its decision to remand on this ground, but it is not convinced that Dr. Meade relied only on Plaintiff's subjective complaints, disregarding his own examinations and the x-rays, MRIs, and other medical tests he ordered and read. *See, e.g.*, AR at AR at 298, 310, 320, 492–94. On remand, it may be helpful for the ALJ to more specifically address how Dr. Meade's treatment notes and opinions were or were not consistent with the other medical evidence presented in the record. *Hamlin*, 365 F.3d at 1219.

Plaintiff tries to lose weight to improve his pain (AR at 26), commented on treatment notes related to Plaintiff's obesity (AR at 27 (citing AR at 388, 393, 473), and expressly included obesity among those limitations that contribute to Plaintiff's ultimate RFC (AR at 29).

Plaintiff does not discuss nor cite to medical evidence that would support a finding that his obesity contributes to additional limitations beyond those that the ALJ noted. *See Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (finding that "Mr. Arles does not discuss or cite to any evidence showing that obesity further limited his ability to perform a restricted range of sedentary work"); *Rose*, 634 F. App'x at 637 (noting that the plaintiff pointed "to no medical evidence indicating that her obesity resulted in functional limitations"). Consequently, the Court finds that remand is not appropriate on this basis.

## VI. Conclusion

The Court finds that the ALJ failed to apply the correct legal standards in assessing Dr. Meade's opinion, where the ALJ failed to provide "good reasons," tied to the regulatory factors, for giving the opinion little weight. The Court will remand to allow the ALJ to conduct the proper two-step analysis.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum *(Doc. 15)* is **GRANTED**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent